UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEIRDRE KENNEDY and TERESA PUGLIESE,

                Plaintiffs,

v.

LUMEDX CORPORATION and INTELERAD MEDICAL SYSTEMS, INCORPORATED,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No. _:__-cv-_____ (___)

**ECF Case**

**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiffs Deirdre Kennedy ("**Ms. Kennedy**") and Teresa Pugliese ("**Ms. Pugliese**") (collectively, "**Plaintiffs**"), by and through their attorneys at Valli Kane & Vagnini LLP, bring this action for damages and other legal and equitable relief from LUMEDX Corporation ("**LUMEDX**" or the "**Company**") and Intelerad Medical Systems, Incorporated ("**Intelerad**," and, collectively with LUMEDX, "**Defendants**"), for Gender Discrimination, Age Discrimination, unlawful termination, and failure to pay wages and sales commissions in violation of Title VII of the Civil Rights Act of 1964, as amended ("**Title VII,**"), the Age Discrimination in Employment Act of 1967 ("**ADEA**"), New York State Human Rights Law ("**NYSHRL**"), Pennsylvania Human Relations Act ("**PHRA**"), the New York Labor Law ("**NYLL**"), the Pennsylvania Commissioned Sales Representatives Law ("**PCSRL**," 43 P.S. §1491), and pursuant to any other cause(s) of action that can be established based upon the factual allegations set forth herein. Plaintiffs allege as follows:

## INTRODUCTION

1.    This action is brought by Plaintiffs challenging acts committed by Defendants which amount to discrimination on the basis of Gender and Age, unlawful termination, and violations of state wage and hour laws which occurred during Plaintiffs' employment by LUMEDX and Intelerad, upon its purchase of LUMEDX.

2.    Plaintiffs are women who were harmed by Defendants' unlawful and discriminatory practices, which diverted Plaintiffs' sales commissions to male sales representatives because of

Plaintiffs' gender. When Plaintiffs discovered and complained of the discriminatory practices, they were terminated in retaliation for engaging in the protected activity of complaining.

3. As a result of Defendants' unlawful discrimination, and Defendants' failure to properly credit Plaintiffs with sales commissions to which they are entitled under State Law, Plaintiffs lost hundreds of thousands of dollars of sales commissions during the course of their employment. Additionally, now that they have been unlawfully terminated, Plaintiffs' have sustained additional damages consisting of their respective lost wages and the emotional distress attendant to the discrimination and unlawful terminations they experienced.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, pursuant to 29 U.S.C. § 206(d), under Title VII of the Civil Rights Act of 1964, as amended.

5. Separately and independently, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, which confers diversity jurisdiction upon this Court to hear claims where the claim exceeds seventy-five thousand dollars ($75,000.00) and the parties are citizens of different states.

6. Each of the Plaintiffs' here assert claims that are in excess of seventy-five thousand dollars ($75,000.00).

7. Each of the parties in this action have "complete diversity" in that no plaintiff and no defendant are from the same state and all plaintiffs are of different citizenship than all defendants.

8. This Court also has jurisdiction over this action pursuant to the Declaratory Judgment Statute, 28 U.S.C. § 2201.

9. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 (a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants each availed themselves of this jurisdiction by their conducting business in this district.

## ADMINISTRATIVE PROCEDURES

11. Pursuant to the administrative requirements of Title VII etc., Plaintiffs filed charges of discrimination the New York and Pennsylvania offices of the Equal Employment Opportunity Commission ("**EEOC**"), received Notice of a Right to Sue letters, and timely filed the instant action within ninety days of their receipt of the Notices.

## PARTIES

12. Plaintiff Deirdre Kennedy ("Ms. Kennedy") is a disabled female veteran with a 70% disability rating due to, *inter alia,* Post Traumatic Stress Disorder. She is over the age of fifty years old. She is a resident of Nassau County, New York. Defendants employed Ms. Kennedy as an Outside Sales Representative from February 15, 2019 to April 17, 2021.

13. Ms. Teresa Pugliese ("Ms. Pugliese") is a female resident of Butler County, Pennsylvania. Ms. Pugliese is over the age of fifty years old. Defendants employed Ms. Pugliese as an Outside Sales Representative from March 4, 2019 to April 17, 2021.

14. Defendant LUMEDX Corporation is a California corporation, with its principal place of business located at 555 12th Street, Suite 2060, Oakland, CA 94612. LUMEDX is a leading vendor of Cardiovascular Information Systems (CVIS) and healthcare analytics in the cardiovascular acute care space.

15. Defendant Intelerad Medical Systems Incorporated is a Canadian corporation, with its principal place of business in Montreal, Canada. Intelerad is an international healthcare technology company focused on scalable medical imaging platforms that connect clinicians to powerful imaging ecosystems and delivering "best in class" medical image management solutions. Intelerad acquired LUMEDX on or about February 2021 and is the 100% shareholder of LUMEDX.

## FACTS

Plaintiffs' Employment by Defendants

16. Plaintiffs are both females over the age of forty (40) years old.

17. Plaintiffs were Outside Sales Representatives employed by LUMEDX to sell software, software as a service ("**SAAS**"), healthcare analytics, professional services and support subscriptions pursuant to the Company's written compensation plans.

18. LUMEDX markets and sells its software, services and analytics throughout the United States, Canada and select international markets by means of a sale force comprised of Outside Sales Representatives, each of whom were assigned to cover a particular geographical sales area under the supervision of the Chief Revenue Officer ("**CRO**").

19. Ms. Kennedy, who lives in New York and worked from New York, was responsible for marketing and sales within nine (9) states and in the Canadian Provinces of Quebec and New Brunswick.

20. Ms. Pugliese, who lives in Pennsylvania and worked from Pennsylvania, was responsible for sales within five (5) states and in the Canadian Province of Ontario, and was responsible for named National Accounts from January 2020, onward.

21. In addition to Ms. Kennedy and Ms. Pugliese, there were four (4) other Outside Sales Representatives.

22. LUMEDX's policy was for all prospective transactions with anticipated Total Contract Value ("**TCV**") of $150,000.00 or higher to be marketed and sold by the Company's Outside Sales Representatives. In contrast, the Company employed Inside Sales Representatives who were responsible for sales with TCV less than $150,000.00.

23. Plaintiffs' sales commissions were unlawfully diverted away from them, to male Outside Sales Representatives, due to LUMEDX's discriminatory sales practices, which included: (a) unlawfully steering transactions with a TCV of over $150,000.00 to male Inside Sales Representatives serving the female Outside Sales Representatives' sales territories; (b) influencing implementation project managers to direct leads or requests for proposals for transactions with anticipated TCV greater than $150,000.00 to male Inside Sales Representatives instead of to female Outside Sales Representatives, and (c) misclassifying transactions that had an anticipated TCV of greater than $150,000.00 by breaking those transactions up into smaller sales transactions so that those transactions could be credited to male Inside Sales Representatives, instead of to female Outside Sales Representatives, despite the fact that all of the individual contracts were made by one purchaser or one department as part of a larger order for all of the components in the aggregate. Those transactions should have been directed and credited to the female Outside Sales Representatives.

24. Plaintiffs were subjected to these unlawful discriminatory practices during their tenure at LUMEDX, and their transactions were diverted to a male Inside Sales Representative named Mr. Thomas Heater ("Mr. Heater").

25. In contrast, male Outside Sales Representatives' transactions with anticipated TCV of $150,000.00 or more were not diverted via the Company's unlawful discriminatory practices. Instead, male Outside Sales Representatives Joseph Davis, Rey Perez, and Phillip Jordan, were properly credited for such transactions. Mr. Heater covered Joseph Davis' territory and never closed any deals under $150,000 in Joseph's territory. In addition, these same male Outside Sales Representatives were permitted to close and received credit for transactions with an anticipated TCV of less than $150,000, which should have been credited to their Inside Sales Representative.

Plaintiffs' Termination by Defendants

26. Ms. Kennedy and Ms. Pugliese repeatedly complained to the Company's executives, Jaime Ojeda, Mickey Norris, Patrick Cambas and Robin Jamison, about the disparate treatment they were subjected to because of their gender. The Company did not conduct any investigation and took no remedial action in response to these complaints.

27. Instead, Plaintiffs were each terminated on or about April 17, 2021, and were told that their terminations were part of a Reduction In Force ("**RIF**").

28. Of the employees terminated in the RIF, 93% were over the age of forty. Moreover, the Company terminated two of its three female salespeople (of nine salespeople in total, *i.e.,* the selection rate for female salespeople was 67% for females, and 0% for males, a statistically significant disparity in selective rates supporting an inference of intentional discrimination based on gender.

29. The putative reason for Plaintiffs' terminations is pretextual because, shortly after the announcement of the putative RIF, the Company posted an open job position with a job description matching Plaintiffs' job. Ms. Kennedy was subsequently replaced with a lesser qualified, younger male Outside Sales Representative named James Douglas, who had *no experience* in either cardiology or analytics, subject matter expertise required to perform the job. Mr. Douglas also took on responsibility for territory and accounts that were previously the responsibility of Ms. Pugliese. Mr. Douglas joined the Company before Ms. Kennedy and Ms. Pugliese were separated from their employment.

30.     Additionally, shortly after the RIF was announced, the Company's Vice President of Sales, Tiffani Misencik, make the following comment: "We are looking for a younger, more energetic sales team and we don't care if they have experience with these products. We will teach them." This comment was made on an open sales call and was witnessed by at least four (4) other employees of the Company.

31.     Plaintiffs have both mitigated their damages by securing suitable employment, but earn less compensation in their new positions than they earned at the Company. Additionally, it took Ms. Kennedy a substantial amount of time to secure new employment.

32.     Plaintiffs sustained emotional distress as a result of Defendants' unlawful conduct and, in the case of Ms. Pugliese, the emotional distress brought on substantial physical symptoms, including gastrointestinal distress and colitis diagnosed as being due to Ms. Pugliese's mental distress. She was compelled to seek medical treatment and was placed on prescription medications and a restricted diet. These changes were extremely impactful upon Ms. Pugliese's lifestyle, because they precluded her engaging in physical exercise, which is a requirement for a preexisting condition she has (Osteoporosis), and the symptoms have required her to stay within areas with immediate access to restroom facilities, substantially limiting her previously engaging social life. Similarly, Ms. Kennedy has sustained emotional distress which aggravated and worsened her previously existing mental health diagnoses (she was granted a 70% disability rating by the Veteran's Administration).

Plaintiffs' Sales Compensation

33.     Plaintiffs were compensated with bonuses and commissions set pursuant to written compensation plans (the "**Compensation Plans**") for 2019, 2020, and 2021, respectively. Ms. Kennedy's compensation was subject to the Compensation Plans for 2019, 2020, and 2021. Ms. Pugliese's compensation was subject to the Compensation Plans for 2020 and 2021.

34.     Each of the Compensation Plans sets forth the conditions necessary for Plaintiffs' commissions to be deemed "earned."

35.     Pursuant to each of their respective Compensation Plans, Plaintiffs' compensation is considered "Earned" on each component of software, services, support or subscriptions when the Company: (a) receives and accepts a valid Purchase Order ("**PO**") and signed Software License Agreement ("**SLA**") and (b) ships the software component, begins to deliver the service component, or begins the annual support or subscription period.

36. The Compensation Plans include additional conditions which vary from plan to plan. For example, the 2019 Compensation Plan also requires that Ms. Kennedy "continuously and materially worked with the customer and LUMEDX personnel in delivery" and that LUMEDX has been paid by the customer.

37. Pursuant to the 2019 Compensation Plan, Ms. Kennedy was eligible for a "Target Compensation Mix" that included a Target OTE, a base salary, total variable compensation, a quota bonus, and target commissions.

38. Ms. Kennedy was also eligible for increased "Accelerated Commissions" if she exceeded booking thresholds of 100.1% of her quota and 125% of her quota, respectively.

39. Under the 2020 Compensation Plan, Plaintiffs' commissions were "earned" when they obtained: (a) a valid PO and signed SLA that was received and accepted; and (b) the company shipped the software component, began to deliver the service component, or began the annual support or subscription period.

40. Pursuant to the 2020 Compensation Plan, Plaintiffs were entitled to commissions that ranged from 2.5% to 10.0%, depending upon the percentage of their quota that they satisfied and upon whether they completed four (4) or more transactions with a Total Contract Value ("**TCV**") of at least $150,000 during the plan year.

41. A provision in the 2020 Compensation Plan provides that upon closing four (4) transactions with a TCV of at least $150,000 or more, they were entitled to retroactive "Catch Up" commission payments on commissions already paid ("**Catch Up Commissions**").

42. A provision of the 2021 Compensation Plan provides that commissions remained payable to Complainants under the same terms as in the 2020 Compensation Plan.

43. Notwithstanding provisions of the Compensation Plans that purport to require Complainants to be employed at the time that commissions and bonuses are paid, Plaintiffs are each entitled to all bonuses and commissions "earned" by them pursuant to the Compensation Plans without regard to their termination dates as a function of New York and Pennsylvania law, respectively.

44. Plaintiffs were not paid all of their sales commissions as required under applicable law.

45. Plaintiffs have not been paid all of their sales commissions within the time required under applicable law.

46. Plaintiffs have not been paid at all for certain transactions, have been only partially paid on other transactions, and, as set forth in further detail, below, have had their commissions unlawfully reduced due to the Company's practices, which included unlawfully steering transactions to Mr. Heater, for transactions within Plaintiffs' sales territories that, pursuant to the Company's policies, should have been directed and credited to Plaintiffs.  These practices constitute unlawful discrimination based on gender, and violate the Company's contractual obligations to Plaintiffs pursuant to the Company's policies, procedures, course of dealings, and the express terms of the Compensation Plans.

47. Plaintiffs seek compensatory and punitive damages, injunctive and declaratory relief, and such other relief as is just and proper, including appropriate equitable relief.

## FIRST CAUSE OF ACTION

**(Gender Discrimination in Violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17)**

*Against all Defendants*

48. Plaintiffs hereby repeat and realleges each and every allegation in the foregoing paragraphs as if set forth fully herein.

49. Plaintiffs are each members of a protected class under Title VII, on the basis of their gender (female).

50. Plaintiffs are, and were at all relevant times, qualified for the Outside Sales Position.  Prior to her termination, Ms. Kennedy had always had positive performance appraisals and had a stellar track record of sales.  Indeed, Ms. Kennedy generated millions of dollars in gross sales from 2019 until her termination in 2021.  At the time of her termination, Ms. Kennedy had already achieved 100% of her sales quota, even though she was only four (4) months into the year.  She had also completed all of the work for additional transactions with cumulative gross sales in excess of an additional $4.1 million dollars and accordingly she was *far ahead* of her sales quota for the year.

51. Similarly, Ms. Pugliese had always had positive performance appraisals and a strong track record of sales.  For instance, in 2021 alone, Ms. Pugliese had over $1,200,000.00 in sales *in the first quarter of the year,* and this total excludes a transaction unlawfully diverted to Mr. Heater that had a TCV in excess of an additional $530,000.00

8

52. Defendants have discriminated against Plaintiffs on the basis of their sex in violation of Title VII by subjecting them to disparate compensation because of their gender, and denying them the opportunity to work in an employment environment free of unlawful discrimination.

53. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiffs have suffered, and continue to suffer, monetary and/or economic harm for which they are entitled to an award of monetary damages and other relief.

54. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress for which they are entitled to an award of monetary damages and other relief.

55. Defendants' unlawful discriminatory and wrongful conduct constitutes a willful and violation of Title VII, was outrageous, was intended to injure Plaintiffs, and was committed with conscious disregard of Plaintiffs' civil rights, entitling Plaintiffs to an award of punitive damages.

## SECOND CAUSE OF ACTION

**(Retaliation and Wrongful Termination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17)**

*Against all Defendants*

56. Plaintiffs hereby repeat and realleges each and every allegation in the foregoing paragraphs as if set forth fully herein.

57. Because Plaintiffs complained about the Company's unlawful and discriminatory compensation practices, Defendants retaliated against Plaintiffs by lumping them into the RIF.

58. Plaintiffs were each qualified for their positions, as demonstrated by their prior positive performance reviews and their actual sales results.

59. Plaintiffs were terminated notwithstanding that they were each substantially ahead of their applicable sales quotas.

60. Plaintiffs were terminated by Defendants at the first available opportunity that Defendants' had to cover up the terminations with a putative legitimate business rationale (the RIF).

61. On information and belief, the RIF only became available as a pretext for the Company's retaliation against Plaintiffs because the Company was negotiating an acquisition by Intelerad, and the RIF became available as a means for the Company to reduce its expenses in comparison to its sales, and to thus make itself look more attractive to its potential acquirer.

62. There was no rationale basis for including Plaintiffs in the RIF based upon their sales records and the status of their consummated sales at the time they were selected for the RIF, particularly if the Company considered additional sales in Plaintiffs' pipeline, which were anticipated to bring in substantial additional revenue.

63. Plaintiffs were terminated by Defendants not for legitimate business reasons, but for their opposition to Defendants' discriminatory sales practices, which diverted sales commissions away from female Outside Sales Representatives to male Inside Sales Representatives, in violation of Title VII.

64. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiffs have suffered, and continues to suffer, monetary and/or economic harm for which they are entitled to an award of monetary damages and other relief.

65. As a direct and proximate result of Defendants' unlawful discriminatory and harassing conduct in violation of Title VII, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress for which they are entitled to an award of monetary damages and other relief.

66. Defendants' unlawful discriminatory and wrongful conduct constitutes a willful and wanton violation of Title VII, was outrageous, malicious and cruel, was intended to injure Plaintiffs, and was committed with conscious disregard of Plaintiffs' civil rights, entitling Plaintiffs to an award of punitive damages.

## THIRD CAUSE OF ACTION

**(Wrongful Termination on the basis of Unlawful Age Discrimination, in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17)**

*Against all Defendants*

67. Plaintiffs hereby repeat and realleges each and every allegation in the foregoing paragraphs as if set forth fully herein.

68. Plaintiffs were each members of a protected class under Title VII, by virtue of them both being over the age of 40 years old.

69. Plaintiffs were each qualified to retain their positions, based upon their positive past performance reviews and sales results.

70. Plaintiffs were each terminated from their employment by Defendants.

71. Defendants terminated Plaintiffs because of Plaintiffs' age, as demonstrated by the comment by the Company's Vice President of Sales, Tiffani Misencik, described above.

72. Defendants' posting of open job positions with the same job description as Plaintiffs' jobs further supports the inference that Defendants terminated Plaintiffs because of their age.

73. Defendants actions are in direct violation of Title VII.

74. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiffs have suffered, and continues to suffer, monetary and/or economic harm for which they are entitled to an award of monetary damages and other relief.

75. As a direct and proximate result of Defendants' unlawful discriminatory and harassing conduct in violation of Title VII, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress for which they are entitled to an award of monetary damages and other relief.

## FOURTH CAUSE OF ACTION

**(Gender Discrimination in violation of the New York Human Rights Law, N.Y. Exec. Law §§ 290 to 297)**

*Against all Defendants*

76. Plaintiffs hereby repeat and realleges each and every allegation in the foregoing paragraphs as if alleged fully herein.

77. Ms. Kennedy is a member of a protected class under the NYSHRL, on the basis of her gender (female).

78. Ms. Kennedy is, and was at all relevant times, qualified for the Outside Sales Position, as set forth above.

79. Defendants have discriminated against Ms. Kennedy on the basis of her sex in violation of the NYSHRL by subjecting her to disparate compensation because of her gender, and denying her the opportunity to work in an employment environment free of unlawful discrimination.

80. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Ms. Kennedy has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

81. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Ms. Kennedy has suffered, and continues to suffer, mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

82. Defendants' unlawful discriminatory and wrongful conduct constitutes a willful and violation of the NYSHRL, was outrageous, was intended to injure Ms. Kennedy, and was committed with conscious disregard of Ms. Kennedy's civil rights, entitling Ms. Kennedy to an award of punitive damages.

## FIFTH CAUSE OF ACTION

**(Gender Discrimination in violation of the Pennsylvania Human Relations Act)**

*Against the Company Defendants*

83. Plaintiffs hereby repeat and realleges each and every allegation in the foregoing paragraphs as if alleged fully herein.

84. Ms. Pugliese is a member of a protected class under the PHRA, on the basis of her gender (female).

85. Ms. Pugliese is, and was at all relevant times, qualified for the Outside Sales Position, as set forth above.

86. Defendants have discriminated against Ms. Pugliese on the basis of her sex in violation of the PHRA by subjecting her to disparate compensation because of her gender, and denying her the opportunity to work in an employment environment free of unlawful discrimination.

87. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the PHRA, Ms. Pugliese has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

88. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the PHRA, Ms. Pugliese has suffered, and continues to suffer, mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

89. Defendants' unlawful discriminatory and wrongful conduct constitutes a willful and violation of the PHRA, was outrageous, was intended to injure Ms. Pugliese, and was committed with conscious disregard of Ms. Pugliese's civil rights, entitling Ms. Pugliese to an award of punitive damages.

## SIXTH CAUSE OF ACTION

**(Violation of the New York Labor Law, §191(c))**

*Against All Defendants*

90. Plaintiffs hereby repeat and realleges each and every allegation in the foregoing paragraphs as if alleged fully herein.

91. Ms. Kennedy was, at all relevant times, a "Commission Salesman" as that term is defined under NYLL §190.

92. NYLL §191(c) sets forth the rules governing the employment of a "Commission Salesman" as that term is defined in NYLL §190 and states, in pertinent part, that a commission salesperson:

> shall be paid the wages, salary, draw and commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month they are earned; provided, however, that if monthly or more frequent payment of wages, salary, drawing accounts or commissions are substantial, then additional compensation earned, including but not limited to extra or incentive earnings, bonuses, and special payments, may be paid less frequently than once in each month, but in no event later than the time provided in the employment agreement or compensation plan.
>
> The employer shall furnish a commission salesperson, upon written request, a statement of earnings due and unpaid. The agreed terms of employment shall be reduced to writing, signed by both the employer and the commission salesperson, kept on file by the employer for a period not less than three years, and made available to the commissioner upon request. Such writing shall include a description of how wages, salary, drawing account, commissions and all other monies earned and payable shall be calculated. Where the writing provides for a recoverable draw, the frequency of reconciliation shall be included. Such writing shall also provide details pertinent to payment of wages, salary, drawing account, commissions and all other monies earned and payable in the case of termination of employment by either party. The failure of an employer to produce such written terms of employment, upon request of the commissioner, shall give rise to a presumption that the terms of employment that the commissioned salesperson has presented are the agreed terms of employment.

NYLL §191(c).

93. Similarly, section 191-c (Payment of sales commission) provides, in pertinent part:

> 1. When a contract between a principal and a sales representative is terminated, all earned commissions shall be paid within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated.
>
> 2. The earned commission shall be paid to the sales representative at the usual place of payment unless the sales representative requests that the commission be sent to him or her through the mails. If the commissions are sent to the sales

representative by mail, the earned commissions shall be deemed to have been paid as of the date of their postmark for purposes of this section.

3. A principal who fails to comply with the provisions of this section concerning timely payment of all earned commissions shall be liable to the sales representative in a civil action for double damages. The prevailing party in any such action shall be entitled to an award of reasonable attorney's fees, court costs, and disbursements.

NYLL § 191-c.

94. Plaintiffs were, at all relevant times, commissioned salespeople compensated with bonuses and commissions set pursuant to written compensation plans (the "**Compensation Plans**").

95. Plaintiffs were governed by Compensation Plans covering the years 2019, 2020, and 2021, respectively.[1] Pursuant to each of their respective Compensation Plans, Plaintiffs' compensation is considered "earned" on each component of software, services, support and subscription when the Company: (a) receives and accepts a valid Purchase Order ("**PO**") and signed Software License Agreement and (b) ships the software component, begins to deliver the service component, or begins the annual support or subscription period.

96. Pursuant to the 2019 Compensation Plan, Ms. Kennedy was eligible for a "Target Compensation Mix" that included a Target "OTE", a base salary, total variable compensation, a quota bonus, and target commissions ("**Rep Commissions**" and "**Team Commissions**"). Additionally, Ms. Kennedy was eligible for increased "**Accelerated Commissions**" if she exceeded booking thresholds of 100.1% of her quota and 125% of her quota, respectively, and applied retroactively.

97. Pursuant to the 2020 Compensation Plan, Plaintiffs' commissions were earned when they obtained: (a) a valid PO and signed SLA that was received and accepted; and (b) the Company shipped the software component, began to deliver the service component, or began the annual support or subscription period. Pursuant to the 2020 Compensation Plan, Plaintiffs were entitled to commissions that ranged from 2.5% to 10.0%, depending upon the percentage of their quota that they satisfied and upon whether they completed four (4) or more transactions with a TCV of at least $150,000.00 during the plan year. Importantly, the 2020 Compensation Plan provides that upon closing four such transactions, Plaintiffs were entitled to retroactive "Catch Up" commission

---

[1] The 2019 compensation plan does not apply to Ms. Pugliese, who was employed in a different position within the Company during that year, where she had a different compensation structure and different responsibilities related to partnerships and corporate accounts.

payments on commissions already paid. Likewise, under the 2021 Compensation Plan, commissions remained payable to Plaintiffs under the same terms as in the 2020 Compensation Plan.

98. Notwithstanding provisions of the Compensation Plans that purport to require Complainants to be employed at the time that commissions and bonuses are earned, Plaintiffs are entitled to all bonuses and commissions "earned" pursuant to the Compensation Plans **without regard to their termination dates**. Upon the separation of Plaintiffs' employment, their earned but unpaid commissions were required to have been paid by the Company "within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated" pursuant to NYLL 191-c.[2]

99. The Company has not paid Plaintiffs as required under applicable law. They have not been paid within the time required, and have not been paid the proper amounts earned and due. Plaintiffs have not been paid at all for certain transactions, have been only partially paid on other transactions, and, as set forth previously herein, have had their commissions unlawfully reduced due to the Company's unlawful and discriminatory sales practices. Plaintiffs' male Outside Sales Representative comparators Joseph Davis, Rey Perez, and Phillip Jordan were not required to hand off all transactions with TCVs less than $150,000.00 and were permitted to keep most all transactions with TCVs greater than $150,000 without having them diverted to Mr. Heater or other Inside Sales Representatives. Similarly, Rey Perez and Phillip Jordan, two male Outside Sales Representatives, were allowed to keep deals under $150,000.00 TCV without turning them over to their male Inside Sales Representative, Allen Sue.

100. As a direct and proximate result of Defendants' unlawful conduct in violation of the NYLL, Ms. Kennedy has suffered economic harm in the form of unpaid commissions and non-discretionary bonuses, in excess of **$563,024.06**, which are "wages" within the meaning of the

---

[2] Provisions of the Compensation Plans to the contrary are unlawful under NYLL §191-c(1), *supra*, which provides that commissions may become "earned" even after an employee has been terminated. Similarly, under the Pennsylvania Commissioned Sales Representatives law, (the "**PCSR**"), a commissioned sales representative who is terminated must be paid all commissions due within fourteen (14) days of the date the commissions become due. *See* 43 P.S. §1471.

NYLL, for which she is entitled to an award of actual damages, liquidated damages and other relief.

## SEVENTH CAUSE OF ACTION

**(Violation of the Pennsylvania Commissioned Sales Representatives law, 43 P.S. §1471)**

*Against all Defendants*

101.  Plaintiffs hereby repeat and realleges each and every allegation in the foregoing paragraphs as if alleged fully herein.

102.  Ms. Pugliese was, at all relevant times, a "Sales Representative" as that term is defined under PCSR §1471(3).

103.  Pursuant to the PCSR, §1472(a), when a Sales Representative enters into an agreement with a principal for the solicitation of wholesale orders, a written contract is required setting forth: (1) the form of payment and the method by which it is to be computed and made; (2) a specified period for the performance of services; (3) the manner and extent to which job-incurred expenses are to be reimbursed; and (4) a specified geographical territory or specified accounts.

104.  PCSR §1473 requires a principal to pay a sales representative all commissions due at the time of termination within 14 days after termination.

105.  Ms. Pugliese did not receive all commissions due to her at the time of her termination within 14 days thereafter.

106.  PCSR §1474 requires Commissions on goods delivered after the end of the agreement to be paid all commissions that become due after termination within 14 days of the date such commissions become due.

107.  Defendants willfully failed to comply with the requirements of the PCSR when they failed to timely pay Ms. Pugliese the commissions she was due.

108.  As a result of Defendants' unlawful actions, Ms. Pugliese is entitled to all commissions due, plus exemplary damages in an amount not to exceed two times the commissions due to her, and the cost of the suit, including reasonable attorney fees. *See* PCSR §1475(a).

109.  Ms. Pugliese earned commissions that became due after her termination, and she was not paid those commissions within 14 days after the date upon which such commissions became due.

110.  As a direct and proximate result of Defendants' unlawful conduct in violation of the NYLL, Ms. Pugliese has suffered economic harm in the form of unpaid commissions and non-

discretionary bonuses, in excess of **$286,575.41 ,** for which she is entitled to an award of actual damages, exemplary damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants, including the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York, and the Commonwealth of Pennsylvania;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for loss of career fulfillment;

F. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs in an amount to be determined at trial, plus prejudgment interest;

G. An award of punitive damages;

H. An award of costs that Plaintiffs' have incurred in this action, as well as reasonable attorneys' fees to the fullest extent permitted by law; and

I. Such other and further relief as the Court may deem just and proper.

Dated:        January 23, 2023
                Garden City, New York

                                        Respectfully Submitted,

VALLI KANE & VAGNINI LLP

*/s/ Matthew L. Berman*
MATTHEW L. BERMAN
*Attorneys for Plaintiff*
600 Old Country Road, Suite 519
Garden City, New York 11530
516-203-7180

18